UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VALORIE C. STANSBERRY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE [1], Commissioner of Social Security,<br><br>　　　　Defendant. | CASE NO.　C06-5427RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 6, 2007 |

Plaintiff, Valorie C. Stansberry, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-six years old.[2] Tr. 27. She has a high school education and past work

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner of Social Security, hereby automatically is substituted for Joanne B. Barnhart.

[2] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

experience as a statistical clerk, certified nursing assistant, manager, and customer service assistant. Tr. 16, 59, 64, 67.

Plaintiff filed applications for SSI and disability insurance benefits on May 9, 2002, and June 1, 2002, respectively, alleging disability as of January 1, 1997, due to anxiety and high blood pressure. Tr. 15-16, 52, 58. Her applications were denied initially and on reconsideration. Tr. 15, 27-29, 34. A hearing was held before an administrative law judge ("ALJ") on October 6, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 255-306.

On December 29, 2004, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of anxiety and hypertension;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform medium work, with limitations on reaching and handling and a restriction to only occasional contact with co-workers and the public, which did not preclude her from performing her past relevant work as a statistical clerk; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 20-22. Plaintiff's request for review was denied by the Appeals Council on July 3, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981, § 416.1481.

On July 28, 2006 plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits for the following reasons:

(a) the ALJ erred in evaluating the opinions of Kimberly Wheeler, Ph.D., an examining psychologist;

(b) the ALJ erred in assessing plaintiff's credibility;

(c) the ALJ erred in assessing plaintiff's residual functional capacity;

---

[3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

REPORT AND RECOMMENDATION
Page - 2

(d)   the ALJ erred in finding plaintiff capable of returning to her past relevant work;

(e)   the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy; and

(f)   the ALJ erred by limiting the ability of plaintiff's counsel during the hearing to question the vocational expert and admit an exhibit into the record.

Defendant admits the ALJ erred in finding plaintiff not disabled, but argues this matter should be remanded to the Commissioner for further administrative proceedings. The undersigned also finds that the ALJ erred in determining plaintiff to be not disabled, and, for the reasons set forth below, agrees with defendant and recommends that the ALJ's decision should be reversed and that this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Erred in Evaluating the Opinions of Dr. Wheeler

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In late October 2002, plaintiff was evaluated by Dr. Wheeler, who diagnosed her with a generalized anxiety disorder, with a strong social phobia component, and panic with agoraphobia. Tr. 241. In addition, Dr. Wheeler found plaintiff to be severely impaired in her ability to relate appropriately to co-workers and supervisors, markedly impaired in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and moderately limited in her ability to: understand, remember and

follow complex (more than two step) instructions; learn new tasks; exercise judgment and make decisions; interact appropriately in public contacts; control physical or motor movements; and maintain appropriate behavior. Tr. 242. Dr. Wheeler felt that while plaintiff was not currently receiving mental health treatment, cognitive behavioral therapy "would be very helpful" for her, and would restore or substantially improve her ability to work for pay in a regular and predictable manner. Tr. 243.

In early March 2003, plaintiff was evaluated again by Dr. Wheeler, who once more diagnosed her with generalized anxiety and a panic disorder with elements of agoraphobia. Tr. 248. However, she also diagnosed plaintiff with alcohol abuse and a personality disorder. Id. Further, Dr. Wheeler now found her to be markedly impaired in her ability to: understand, remember and follow complex instructions, perform routine tasks, relate appropriately to co-workers and supervisors, interact appropriately in public contacts, control her physical or motor movements; and maintain appropriate behavior. Tr. 249. Plaintiff remained moderately limited in her ability to learn new tasks and exercise judgment and make decisions. Id.

As she did in late October 2002, Dr. Wheeler opined that mental health treatment likely would restore or substantially improve plaintiff's ability to work for pay in a regular and predictable manner, but noted that plaintiff had "not been compliant in securing" such treatment. Tr. 250. In addition, Dr. Wheeler believed plaintiff's alcohol use was contributing to her condition and would interfere with any medication management of her anxiety. Id.

Plaintiff argues the ALJ improperly rejected the opinions of Dr. Wheeler without comment, because none of the mental functional limitations found by Dr. Wheeler were included in the ALJ's assessment of her residual functional capacity. Defendant argues the ALJ did provide specific and legitimate reasons to reject Dr. Wheeler's opinions, pointing to internal inconsistencies the ALJ found between the two opinions she issued, inconsistencies between those opinions and the records of the physician's assistant who treated plaintiff, and plaintiff's own activities of daily living.

It is true as defendant asserts that the ALJ noted the above inconsistencies and plaintiff's activities of daily living. See Tr. 18. The ALJ did so, however, only in the context of determining whether plaintiff's anxiety constituted a "severe" impairment.[4] The determination of whether or not an impairment is severe is,

---

[4] At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), ( c), § 416.920(a)(4)(iii), ( c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect

REPORT AND RECOMMENDATION
Page - 5

as explained below, an entirely different process from determining what mental or physical limitations, if any, should be included in the assessment of a claimant's residual functional capacity to perform his or her past relevant work or other work at steps four and five respectively.[5] The ALJ's failure to provide any analysis of Dr. Wheeler's findings with respect to these latter steps constitutes error.

II.   The ALJ's Analysis of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

---

on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).

[5]For the same reason, the undersigned rejects plaintiff's contention that the ALJ erred by appearing to credit Dr. Wheeler's opinions and findings for the purpose of assessing impairment severity, but then rejecting them without comment in assessing her residual functional capacity. Because the standards for assessing each are so different (for example, the step two analysis is merely a *de minimis* screening device used to dispose of groundless claims), it is not at all improper, or, indeed, even unusual, for an ALJ to find medical evidence credible in the first instance, but not in the second. Smolen, 80 F.3d at 1290.

REPORT AND RECOMMENDATION
Page - 6

Plaintiff argues the ALJ failed to articulate any reasons for rejecting her testimony. Defendant, on the other hand, asserts the ALJ did provide valid reasons for discounting plaintiff's credibility, consisting of the following:

> There is little evidence that the claimant's hypertension has an adverse impact on her physical ability to perform her past relevant work. The medical doctors who evaluated the claimant's physical functional capacity concluded that the severity of her symptoms were disproportionate to the expected severity or duration on the basis of the claimant's medically determinable impairments. 6F/6. It was their opinion that the claimant had the ability to lift and carry up to 50 pounds occasionally, and up to 25 pounds frequently. She would be able to sit, stand, or walk for about six hours in an eight hour work day. It was their opinion that she was not limited with respect to pushing and pulling movements. She has manipulative limitations – reaching and handling – as a result of injury to her right elbow. She does not have postural, visual, communicative, or environmental limitations. Therefore, the undersigned concludes that the claimant retains the ability to perform medium work with the above manipulative limitations.
>
> With respect to the claimant's nonexertional limitations, treating source Jen Vetter noted on multiple occasions that the claimant did not wish to be prescribed medication for her anxiety. Further, records reflect that the claimant's last visit to her long-time treating sources at the Wenatchee Valley Clinic concerning her anxiety was November 15, 1999. 1F/3. However, in her July, 2002 disability evaluation with examining physician Robert Bloomgarden, M.D., the claimant indicated that she did not believe she could work at a job due to her anxiety. 3F/1. At that time, Dr. Bloomgarden noted that her "refusal to seek psychiatric care or take psychotropic medications" was a stressor. Dr. Bloomgarden's conclusions was that "[t]he patient's prognosis is excellent . . . She has been able to function in work settings in the past. One would expect that with adequate psychotherapy and pharmacotherapy she would probably be relative[ly] symptom free in a period of three to six months." As recently as January 16, 2004, the claimant's treating source reported that "she does not feel she needs to take the Paxil because she is able to control her anxiety symptoms by not dealing with things such as leaving the home at times or avoiding events that will lead to anxiety. The patient refuses counseling for anxiety as well . . . Discussed with the patient the importance of treatment for anxiety disorder, counseling. The patient refused both medication and counseling." 8F/11. The undersigned finds that, when properly medicated, the claimant would likely be able to function in the workplace with occasional contact with the public and co-workers.

Tr. 19. For the reasons set forth below, the undersigned finds the ALJ failed to clearly set forth his reasons for discounting plaintiff's credibility, and for that reason erred.

Plaintiff first takes issue with the ALJ's findings regarding her refusal to take her prescribed anti-anxiety medications. She asserts that the ALJ's discussion here was designed specifically to assess her residual functional capacity, and that nowhere therein did he find this factor undermined her credibility. The undersigned agrees the above-quoted language focuses primarily on the ALJ's perception of plaintiff's residual functional capacity rather than on her credibility. As such, that language did not provide enough notice that the ALJ was engaging in a credibility evaluation.

The undersigned does note that in the paragraph immediately preceding this quoted language, the

REPORT AND RECOMMENDATION
Page - 7

ALJ made the following statement:

> [T]he undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR §§ 404.1529 and 416.929, and Social Security Ruling 96-7p.

Id. At first glance, this statement might appear to indicate an intent to engage in a determination regarding plaintiff's credibility, as the Social Security Regulations and Rulings referred to by the ALJ specifically deal with the evaluation of claimant statements regarding pain and other symptom testimony.

Nowhere in the discussion regarding plaintiff's residual functional capacity that followed thereafter, however, did the ALJ sufficiently make clear that he was conducting a credibility determination as well. The undersigned agrees that an ALJ is not required to make use of certain "magic" statements or words, as "it serves no purpose to require every step of each decisional process to be enunciated with precise words and phrases drawn from relevant disability regulations." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989); Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986). Here, however, the Court is left to decipher whether or not the ALJ made a credibility determination at all.

On the other hand, the undersigned does not necessarily agree with plaintiff's argument that even if the ALJ properly had referred to her failure to seek treatment as a basis for discounting her credibility, it was improper for him to do so. Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

It is true, as plaintiff points out, that the Ninth Circuit has noted that those with depression often do not recognize their condition reflects potentially serious mental illness. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (finding that merely because treatment for mental disorder is not sought until late in day is not substantial basis on which to conclude that medical source's assessment of claimant's condition is inaccurate); see also Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (holding invalid ALJ's rejection of claimant's assertions regarding his depression due to failure to seek psychiatric treatment,

REPORT AND RECOMMENDATION
Page - 8

finding questionable practice of chastising one with mental impairment for exercise of poor judgment in seeking rehabilitation).

Here, however, in contrast to the above decisions, the evidence shows plaintiff did not suffer from depression and was well aware of her problems with anxiety. For example, in mid-June 1999, she reported that anxiety had been a "long-term problem for her." Tr. 103, 105. In late October 2000, plaintiff denied having "significant depressive symptoms." Tr. 175. In early July 2002, plaintiff again denied "ever having been depressed," stating she did not think she could work due to anxiety. Tr. 177-78. In addition, over the years, plaintiff consistently has been diagnosed as suffering from anxiety, including "severe" anxiety. Tr. 100-01, 103, 109, 224, 229, 241, 248.

Plaintiff next argues her testimony shows she was justified in ceasing to take her anti-depressant medications, because they caused shaking and weird dreams. It is true that plaintiff testified at the hearing that she experienced these medication side effects. Tr. 273. Other evidence in the record, however, show that she has proffered varying reasons at different times for not seeking or following prescribed treatment. For example, in early December 2003, while plaintiff reported that she had discontinued taking Paxil in the past "because it was too much for her system," she also refused to take other medications for the treatment of anxiety without providing any reason for her refusal. Tr. 229.

While plaintiff further stated in mid-January 2004, that she did not like to take medications because of possible side effects, it is not clear whether she was referring to her past use of Paxil noted above, to the medications she had been prescribed for hypertension, to other medications, or to all of the above. Tr. 224. Regardless, a second statement plaintiff made calls this reason for not complying with her recommended treatment into question as well. That is, she told her treatment provider that she did not feel she needed to take the Paxil, because she was "able to control her anxiety symptoms by not dealing with things such as leaving the home at times or avoiding events" that would lead to anxiety. Id.

It also appears that plaintiff was getting good results from her medication, as well as from other types of mental health treatment. In early December 2000, for example, plaintiff reported that her anxiety was "controlled using medication and relaxation therapy," and that she was "doing quite well with this." Tr. 174. This would appear to contradict her other statements that she could not tolerate her medication due to the alleged side effects she was experiencing.

REPORT AND RECOMMENDATION
Page - 9

1 As noted above, the ALJ also commented on plaintiff's refusal to pursue recommended mental
2 health counseling. Plaintiff argues she legitimately declined to pursue this course of treatment because of
3 limited insurance coverage and poverty. Plaintiff did testify that this was the reason she did not pursue one-
4 on-one therapy, also testifying that she did not feel able to do group therapy that was covered by her
5 insurance due to her symptoms. Tr. 274-75. However, she never gave this as a reason for refusing or not
6 seeking such therapy to any of the medical sources in the record, despite being informed of the importance
7 of counseling to treat her anxiety. See Tr. 178, 224, 243.

8 As further noted above, the ALJ discussed the lack of evidence in the record establishing plaintiff's
9 hypertension had an adverse impact on her physical ability to perform her past relevant work. He also
10 referred to medical opinions that concluded the severity of plaintiff's symptoms were disproportionate to
11 the expected severity or duration of those symptoms. Despite her claim that she is disabled based in part on
12 her hypertension, plaintiff points to no medical evidence in the record, nor has the undersigned found any,
13 to show she suffers from work-related limitations, significant or otherwise, due to her hypertension. This is
14 a valid reason for discounting a claimant's credibility. See Regennitter v. Commissioner of SSA, 166 F.3d
15 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are inconsistent with clinical
16 observations can satisfy clear and convincing requirement).

17 Plaintiff argues that her credibility is bolstered because her "white coat syndrome" arguably is
18 consistent with agoraphobia and anxiety. Even if this interpretation of medical diagnoses is plausible, the
19 decision-maker, in this case the Court, should not substitute its own lay opinion for that of competent
20 medical opinion. See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st
21 Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v.
22 Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily
23 substitute own judgment for competent medical opinion); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir.
24 1978). No medical source in the record, furthermore, has opined or implied that "white coat syndrome" is
25 consistent with diagnoses of anxiety or agoraphobia.

26 In any event, "[t]he mere existence of an impairment is insufficient proof of a disability" Matthews v.
27 Shalala, 10 F.3d 678, 680 (9th Cir. 1993). That is, plaintiff must show more than just that her diagnosed
28 impairments are consistent or similar in order to challenge an ALJ's credibility determination. Rather, she

also must show that those diagnoses resulted in symptoms consistent with her allegations of an inability to work. She has not done so here.

Plaintiff finds it notable that defendant has cited no accusations of exaggeration or malingering by any of the medical sources in the record. First, the issue of malingering is important primarily with respect to the determination of the standard that should be used to review the ALJ's stated reasons for discounting a claimant's credibility. As such, the mere fact that no evidence of actual malingering is contained in the record does not mean that the ALJ cannot therefore give clear and concise reasons for otherwise finding a claimant to be not fully credible. In addition, the ALJ himself pointed out there was a medical evaluation of plaintiff's physical functional capacity in the record, resulting in a finding that the severity or duration of her reported symptoms were disproportionate to what would be expected based on her impairments, surely an indicator of possible symptom exaggeration. Tr. 19, 208.

Lastly, the parties argue over whether the ALJ's discussion of plaintiff's activities of daily living constitutes a valid basis for discounting her credibility. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.

Here, however, as with his analysis of Dr. Wheeler's opinions, the ALJ only discussed plaintiff's activities in the context of a step two severity analysis. He did not set forth those activities as a factor in his determining whether or not plaintiff was credible. Accordingly, it would appear that defendant cannot use this factor as a basis for arguing that determination was proper. The undersigned does note, however, that the fact that one reason for discounting a claimant's credibility is improper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record. See Tonapetyan, 242 F.3d at 1148. Accordingly, the undersigned notes that although no finding regarding plaintiff's credibility is being made at this time due to the ALJ's above-noted failure to provide clear reasons for discounting it, the record does not necessarily preclude the ALJ from making an adverse credibility determination on remand.

III.     The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant retains the physical residual functional capacity to perform medium work with reaching and handling manipulative limitations. She has minimal nonexertional limitations, and retains the residual functional capacity to work in a position with occasional contact with the public and with co-workers.

Tr. 20. Plaintiff argues the above assessment is deficient, because the ALJ failed to assess whether she was capable of working on a regular and continuing basis for eight hours a day, five days a week. However, it is plaintiff who has the burden of coming forth with evidence to show that she is incapable of performing work on such a continuing basis. See Tackett, 180 F.3d at 1098-99 (claimant has burden of proof on steps one through four of the sequential disability evaluation process). She has not done so here, nor does there appear to be any such evidence in the record.

Plaintiff next argues the ALJ appeared to improperly minimize her anxiety disorder by focusing on her statement that she was able to control her anxiety symptoms by not dealing with things such as leaving home at times or avoiding events that lead to anxiety. She equates her ability to control her symptoms in this way with a highly structured environment, such as a sheltered workshop, which has been found not to establish the capacity to engage in substantial gainful activity. Plaintiff, however, takes the ALJ's mention

REPORT AND RECOMMENDATION
Page - 12

of this statement entirely out of context. He referred to that statement primarily in the context of showing that plaintiff's refusal of anti-anxiety medication, which the record demonstrates likely would have been of great benefit to her (see Tr. 180-81, 224, 250), was not justified.

On the other hand, as discussed above, the undersigned agrees with plaintiff that the ALJ erred in failing to consider the opinions of, and mental functional limitations found by, Dr. Wheeler in the context of assessing plaintiff's residual functional capacity. The undersigned though does not agree with plaintiff faulting the ALJ for relying in part on the opinion of Dr. Robert E. Bloomgarden that "[o]ne would expect that with adequate psychotherapy and pharmacotherapy she would probably be relative[ly] symptom free in a period of three to six months." Tr. 180. She characterizes this opinion as mere speculation. There is no evidence that this opinion was based on anything other than Dr. Bloomgarden's own medical expertise and detailed evaluation of plaintiff. This is a proper basis upon which to form a psychiatric prognosis. Indeed, while Dr. Bloomgarden saw plaintiff only one time, his evaluation is far more detailed and thorough than either of those provided by Dr. Wheeler, upon whose opinions plaintiff chiefly relies.

Plaintiff next argues the ALJ's assessment of her residual functional capacity is deficient because it lacks any specificity regarding the nature and extent of the reaching and handling manipulative limitations the ALJ found she had. Defendant appears to agree, and so does the undersigned. On remand, therefore, the nature and extent of those limitations should be fleshed out in greater detail so as to provide a proper basis for determining the effect, if any, those limitations have on plaintiff's ability to work.

While, as discussed above, the undersigned agrees the ALJ erred in not considering the findings of Dr. Wheeler in the context of assessing plaintiff's residual functional capacity, it is not yet clear the ALJ would be required to include in that assessment the marked limitation Dr. Wheeler found plaintiff had in her ability to tolerate the pressures and expectations of a normal work setting. Indeed, Dr. Bloomgarden, whose opinion plaintiff almost entirely ignores, found very little in the way of significant mental functional limitations stemming from her anxiety disorder, that could not be fairly quickly and effectively treated with proper medication management and mental health counseling. See Tr. 177-81; Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where examining physician's opinion is based on independent clinical findings, ALJ may disregard conflicting opinion in another examining physician's diagnosis).

IV. The ALJ's Step Four and Step Five Analysis

Plaintiff has the burden at step four of the disability evaluation process to show that she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). At step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question in which he asked the vocational expert to consider an individual who could "do at least medium level work as far as that's concerned," and "would just have occasional contact with the public and coworkers." Tr. 290. In response to that hypothetical question, the vocational expert testified in part that plaintiff's past job as a statistical clerk came within the work-related limitations provided by the ALJ. Tr. 291-92. Based on the vocational expert's testimony, the ALJ found plaintiff capable of returning to that job. Tr. 20.

Plaintiff argues the ALJ erred in so finding for several reasons. First, plaintiff asserts that because the ALJ did not present to the vocational expert any of the mental functional limitations found by Dr. Wheeler, the vocational expert's testimony was deficient, and therefore the ALJ's reliance thereupon was improper. While, as explained above, the undersigned does not find the ALJ necessarily was required to adopt those limitations, he did err in not properly considering them in assessing plaintiff's residual functional capacity. As such, it cannot be said the ALJ committed no error in failing to present such limitations to the

vocational expert.

Plaintiff next asserts the ALJ erred in failing to present the vocational expert with the reaching and handling manipulative limitations with which the ALJ assessed plaintiff. Again, the undersigned agrees. As noted above, the ALJ included these limitations in his assessment of plaintiff's residual functional capacity. However, also as noted above, those limitations were not presented to the vocational expert for consideration. Accordingly, the information upon which the vocational expert based his testimony was further deficient for this reason as well.

Third, plaintiff argues the ALJ erred by not performing a functional analysis of her capabilities and comparing them with those required by her past relevant work. In determining that a claimant retains the capacity to perform a past relevant job, "the determination or decision must contain among the findings the following specific findings of fact:

> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Social Security Ruling ("SSR") 82-62, 1982 WL 31386 *4. Plaintiff asserts that while the ALJ noted some of the tasks involved in her former job as statistical clerk, he did not perform the comparison required by SSR 82-62. Once more, the undersigned agrees.

Although it was defective as explained above, the ALJ did make a finding of fact as to plaintiff's residual functional capacity. Tr. 20. The ALJ also asked the vocational expert regarding, and included in his written decision, the tasks plaintiff did while performing, and are used to perform, the job of statistical clerk. Tr. 20, 291. Further, the ALJ made a finding of fact that plaintiff's residual functional capacity would permit her to return to her past job of statistical clerk. Tr. 20. What the ALJ did not do, however, and what SSR 82-62 requires, is make a finding of fact of the specific physical and mental demands of, i.e., the work-related functional capabilities needed to do, that job. This was error.

Lastly, plaintiff argues the ALJ's step four and five findings are unsupported, because the residual functional capacity with which he assessed plaintiff precludes the jobs identified, and because those jobs require reaching and handling, which the ALJ found to be limited. The undersigned disagrees. Although, as discussed above, the ALJ did err in assessing plaintiff's residual functional capacity, it is not at all clear,

REPORT AND RECOMMENDATION
Page - 15

1  based on the evidence in the record that plaintiff is incapable of performing the job of statistical clerk or the
2  other jobs which the vocational expert identified and the ALJ found she could do. See Tr. 20, 290-91.

3      In addition, it is true that the other jobs identified by the vocational expert, wire worker and file
4  clerk, do require, at least according to the Dictionary of Occupational Titles ("DOT"), frequent reaching
5  and handling. See DOT 728.684-022; DOT 206.367-014. Plaintiff also argues the job of statistical clerk
6  requires constant handling, fingering and feeling. There is no reliable evidence in the record, however, that
7  plaintiff has any limitations regarding fingering or feeling. Further, although the evidence shows plaintiff is
8  limited in reaching and handling, it fails to indicate to what extent she is so limited. Thus, it is not at all
9  clear the job of statistical clerk or the two other jobs identified by the vocational expert would be entirely
10  precluded for this reason.

11  V.    <u>The ALJ's Conduct at the Hearing</u>

12      Plaintiff argues the ALJ refused to permit her attorney to question the vocational expert concerning
13  the mental functional limitations found by Dr. Wheeler. The undersigned disagrees. It is true the ALJ and
14  plaintiff's attorney disagreed on the propriety of using a mathematical equation to use in defining the term
15  "moderate" developed by plaintiff's attorney. See Tr. 300-02. It also is true the ALJ refused to permit
16  plaintiff's attorney to admit that equation into the record The undersigned, however, sees no error in the
17  ALJ's refusal to do so. While plaintiff terms it a "simple" mathematical equation, she presents nothing to
18  show that the evidence in the record supports use of such a model in this case.

19      In addition, the ALJ did allow plaintiff's attorney to question the vocational expert regarding the
20  moderate limitations found by Dr. Wheeler, and even invited her to use her own definition of the term
21  "moderate" in terms of a specific percentage or fraction of the day. See Tr. 299-300. It was only when
22  plaintiff's attorney insisted on submitting documentation of the mathematical equation she had developed,
23  instead of positing a such a specific definition, that the ALJ stated he would not accept that evidence. In
24  other words, plaintiff's attorney was given the opportunity to define the term "moderate" for the vocational
25  expert, but did not take advantage of that opportunity. As such, the undersigned does not find the ALJ did
26  not fairly and fully develop the record as plaintiff asserts.

27  VI.    <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

28      The Court may remand this case "either for additional evidence and findings or to award benefits."

Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain with respect to evaluation of the medical evidence in the record, plaintiff's residual functional capacity, her ability to perform her past relevant work, as well as other work existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

Plaintiff argues that because the ALJ erred in evaluating the opinions of Dr. Wheeler, and because the vocational expert testified that certain moderate and marked mental functional limitations found by Dr. Wheeler would preclude the ability to sustain employment, she should be found disabled.  The undersigned disagrees.  It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted).  However, the Court of Appeals has stated it is "not convinced" the "crediting as true" rule is mandatory. Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (declining to apply credit as true rule with respect to ALJ's improper rejection of claimant's subjective complaints).  Thus, at least where findings are insufficient as to whether particular evidence should be "credited as true," it appears the courts do "have some flexibility in applying" that rule. Id.

Here, as explained above, it is not clear the ALJ would be required to adopt the mental functional limitations found by Dr. Wheeler.  Indeed, Dr. Bloomgarden, another examining medical source, found little in the way of substantially limiting, let alone disabling, restrictions due to plaintiff's anxiety disorder, noting

1 in particular that appropriate medication management and mental health counseling likely would cause her
2 to be symptom free within three to six months. Tr. 179-81. In addition, where the ALJ is not required to
3 find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be
4 resolved, and therefore the Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d
5 1112, 1116 (9th Cir. 2003). Given the conflict in the medical evidence noted above, it cannot be said that
6 the ALJ would be required to find plaintiff disabled.

7 VII.    Remand to a Different ALJ

8 Plaintiff argues that should this Court remand this matter for further administrative proceedings, it
9 should be remanded to a different ALJ. The undersigned agrees. The ALJ already has had two chances to
10 properly address all of the issues in this case. Each time, he has failed to do so. On remand, therefore, the
11 Commissioner shall set this matter for consideration before a different ALJ.

## CONCLUSION

13 Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff
14 was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for
15 further administrative proceedings in accordance with the findings contained herein.

16 Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),
17 the parties shall have ten (10) days from service of this Report and Recommendation to file written
18 objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those
19 objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit
20 imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 6, 2007**, as
21 noted in the caption.

22 DATED this 15th day of March, 2007.

Karen L. Strombom
United States Magistrate Judge